IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBERT J. YANO, JR.,

    Plaintiff,

v.                                                Civil Action No. 5:05CV91
                                                       (STAMP)

UNITED MINE WORKERS OF AMERICA
HEALTH AND RETIREMENT FUNDS,
MICHAEL H. HOLLAND,
MICHAEL W. BUCKNER,
STEVEN F. SCHAAB and
B.V. HYLER, Trustees of the
1974 Pension Plan and Trust,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.    Procedural History

On June 15, 2005, the plaintiff, Robert J. Yano, Jr., filed a complaint in the Circuit Court of Brooke County, West Virginia against the defendants, United Mine Workers of America ("UMWA") Health and Retirement Funds and the Trustees, Michael H. Holland, Michael W. Buckner, Steven F. Schaab and B.V. Hyler ("Trustees"), to obtain judicial review of a decision by the Trustees. On July 7, 2005, the Trustees removed this action pursuant to 28 U.S.C. § 1446(a) to the United States District Court for the Northern District of West Virginia.

On November 16, 2005, the plaintiff filed a motion for summary judgment, to which the Trustees responded and the plaintiff replied. On November 18, 2005, the Trustees filed a motion for

summary judgment, to which the plaintiff responded.  The Trustees did not file a reply.

Having reviewed the parties' motions for summary judgment, and the responses and reply thereto, this Court finds that the plaintiff's motion for summary judgment must be denied and the Trustees' motion for summary judgment must be granted for the reasons stated below.

## II. Facts

The 1974 Pension Plan and Trust was established pursuant to the National Bituminous Coal Wage Agreement of 1974.  The 1974 Pension Trust is one of several separate employee benefit trusts collectively referred to as the UMWA Health and Retirement Funds.

The plaintiff was injured on August 18, 1990, in a covered mine accident while performing classified work for a signatory employer.  The accident resulted in injuries to the plaintiff's left foot and ankle.  The first doctor to treat the plaintiff after his injury was Dr. Charles Capito, who reported that the plaintiff had stepped off a bulldozer into a hole and twisted his left ankle. Dr. Capito released the plaintiff to return to work on January 2, 1991. On July 23, 1991, Dr. Capito concluded that an "examination for [a] nerve problem radiating from his back is within normal limits for motor, sensory and DTR's.  I feel that he has early degenerative arthritis in the ankle joint."  (Administrative Record, Pension Application File at 63.)  Dr. Capito referred the

plaintiff to Dr. Sarjit Singh, a neurologist. An examination of the plaintiff by Dr. Singh revealed tender cervical and lumbar spine, but unremarkable nerve conduction studies. On August 13, 1991, Dr. Capito reported that the plaintiff suffered from a chronic ankle sprain, but he was able to "work on a full duty basis." (Id. at 136.) On December 26, 1991, Dr. Jeffrey Baum, examined the plaintiff and advised him that during the examination he found that the plaintiff had a normal range of motion in the cervical spine, and did not believe that the plaintiff had any "significant neurological compromise from a mechanical basis causing his symptoms." (Id. at 225.) That same day, Dr. Baum also stated, in a letter to Dr. Capito, that the plaintiff had recovered from his bad ankle sprain.

On February 28, 1992, the plaintiff was evaluated by Dr. Jonathan Lechner. When asked if the plaintiff's injuries were causally related to the August 1990 accident, he replied "yes" as far as his ankle is concerned and "not definite" as far as neck and back. (See Administrative File Trustees' Op. at 11.)

The plaintiff returned to work on April 20, 1992. Sometime during that day, he went to the emergency room complaining of back, abdomen and chest pain. An x-ray of the plaintiff's spine revealed degenerative changes to the dorsal spine, minimal anterior spurs at L4-5 of the lumbar spine and calicification of the abdominal aorta. On June 4, 1992, the plaintiff was seen for the first time by Dr.

Richard Glass. In a June 29, 1992 letter to the UMWA, Dr. Glass stated that: [w]e feel that he has chronic lumbosacral strain of his back, which we feel is due to having to limp on his left leg and causing extra strain in the lower back and therefore, we feel it is related to his work injury." (Administrative Record at 54; Trustees' Op. at 12.)

The plaintiff continued to work in the coal industry until May 9, 1992. The plaintiff was then laid off in July 1992, while he was on workers' compensation. On March 2, 1993, x-rays of his neck and back revealed mild degenerative spondylosis and moderate interspace narrowing of the lumbosacral level.

The plaintiff was determined to be disabled under Title II of the Social Security Act and was granted social security benefits effective November 21, 1994. The plaintiff's social security disability claim was granted on the basis that the plaintiff was disabled due to discogenic and degenerative disorders of the spine, specifically, chronic lumbosacral strain, degenerative spondylosis and degenerative disc disease.

Dr. Baum also described an independent medical examination that was performed by Dr. Russell Leslie on September 20, 1995. Dr. Baum reviewed the report and stated "that he did not find any direct correlation regarding his [the plaintiff's] back symptoms with [the] left ankle injury in August of 1990." (Administrative Record at 181.) There was no report from Dr. Leslie available for

review by the Trustees. Dr. Baum evaluated the plaintiff again on December 4, 1995, and described the plaintiff's gait and station as normal, with normal neurologic examination of the lower extremities. In his evaluation, Dr. Baum stated that it is his opinion that the plaintiff's ankle sprain could have caused some type of back trouble, but he thinks that the relationship regarding this is "very gray." (Id.)

The plaintiff applied for a pension under the 1974 Pension Trust on January 10, 2002. The plaintiff's initial application for a UMWA disability pension was denied on October 8, 2003. On appeal, the plaintiff's claim was denied again on May 7, 2004. The plaintiff then requested a reconsideration of his appeal based upon newly submitted information. After reviewing the submitted evidence, the UMWA denied the plaintiff's claim on January 14, 2005. After the plaintiff exhausted his administrative remedies, he filed the present action.

In this civil action, the plaintiff seeks an order from this Court that the Trustees abused their discretion in determining that the plaintiff did not meet eligibility requirements for a disability pension because he was not disabled due to a mining accident. The plaintiff seeks damages for all back benefits to which the plaintiff is entitled, attorney's fees and costs, general damages, including annoyance and inconvenience, grief, humiliation

5

and pain and suffering and immediate commencement of the disability pension offered under the 1974 Pension Trust.

### III. Applicable Law

When an Employee Retirement Income Security Act ("ERISA") disability pension plan commits eligibility determinations to the discretion of the plan administrator or fiduciary, we review those determinations for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2 80 (1989). "It is well-established that the abuse of discretion standard under Firestone is applicable to our review of the Trustees' decisions under the UMWA pension plans." Hale v. Trustees of United Mine Workers Health and Ret. Funds, 23 F.3d 899, 901 (4th Cir. 1994). Under this standard, "we will not disturb such a decision if it is reasonable." Booth v. Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan, 201 F.3d 355, 342 (4th Cir. 2000).

Although this Court may consider many factors in determining the reasonableness of a fiduciary's discretionary decision, see Booth, 201 F.3d at 342-343,; Brogan v. Holland, 105 F.2d 158, 161 (4th Cir. 1997); Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 77 (4th Cir. 1993), the only factor at issue here is the degree to which the considered materials support the Trustees' decision. See Booth, 201 F.3d at 342 (listing the "adequacy of the materials considered to make the decision" as a

factor).  In other words, given the context of this case, the Trustees' decision is reasonable if it is supported by substantial evidence.  See Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995).

Under the abuse of discretion standard applicable in this civil action, this Court is limited to reviewing only the administrative record that was before the Trustees at the time of their initial decision denying pension benefits.  Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994).

## IV.  Discussion

A plaintiff must make three showings to be eligible for a disability pension under the 1974 UMWA Pension Trust.  See Boyd v. Tr. of United Mine Workers Health & Retirement Funds, 873 F.3d 57, 59 (4th Cir. 1989).  First, the plaintiff must establish that he was involved in a mine accident.  Id.  Second, he must show that he has been awarded Social Security Disability Insurance ("SSDI") benefits, thus conclusively establishing that he has a disability (qualifying disability).  Robertson v. Connors, 878 F.2d 472, 475 (4th Cir. 1975).  Finally, he must prove that the mine accident proximately caused, or was substantially responsible for the qualifying disability.  Id.; Boyd, 873 F.2d at 59.

The Trustees use a set of inquiries called "Q&As" to help them interpret the terms of the 1974 Pension Plan.  See Brogan, 105 F.3d

7

at 162. The Trustees promulgate these "Q&As" pursuant to their authority under the Plan to issue rules and regulations implementing the Plan. See Lockhart v. United Mine Workers of Am. 1974 Pension Trust, 5 F.3d 74, 77, 78 (4th Cir. 1993). We "afford the Trustees' interpretation of these rules the same deference that we give the Trustees' interpretation of the language of the Plan itself." Brogan, 105 F.3d at 162.

"Q&A" 252 states that a miner cannot be totally disabled as a result of a mine accident if the disability is a progressive disease. Specifically, it states that:

> miners who become disabled by progressive disease such as black lung, silicosis, tuberculosis, arthritis, rheumatism, etc. cannot be considered disabled as a result of a "mine accident" under the 1974 Pension Plan.

(Defs.' Mot. Summ. J. Ex. C. at 1.)

In their motion for summary judgment, the Trustees contend that summary judgment is appropriate because the Trustees' determination is supported by substantial evidence. In response, the plaintiff asserts that the record reflects that the plaintiff's mining accident, which occurred in August 1990, was the cause of his back problems. Specifically, the plaintiff states that Dr. Glass opined that the plaintiff's mining accident "exacerbated his back problems" because the mining accident resulted in an altered gait that aggravated his pre-existing back condition. (Pl.'s Resp. Defs.' Mot. Summ. J. at 3.) The plaintiff further states that Dr.

8

Baum also believed that the plaintiff's ankle injury "could have caused some type of back trouble." Id.

In his motion for summary judgment, the plaintiff asserts that the Trustees abused their discretion by failing to grant the plaintiff benefits under the terms of the 1974 Pension Trust. In response, the Trustees assert that the district court must decide whether there is substantial evidence in the record supporting the Trustees' decision to deny benefits. McCoy, 364 F.2d 166, 170 (4th Cir. 2004). The Trustees contend that they properly considered the opinions of all of the doctors who treated the plaintiff and that their decision is supported by substantial evidence.

In this civil action, it is undisputed that the plaintiff has met the first two requirements. With respect to the third requirement, the Trustees determined that the plaintiff's disability was substantially caused by his discongenic and degenerative disc disorders of the spine, including lumbosacral strain, degenerative spondylosis and degenerative disc disease and that none of these disorders were caused by the mine accident.

The Trustees' conclusions are supported by the following undisputed facts:

- The plaintiff was involved in a mine accident on August 18, 1990, that meets Plan requirements;

- The Administrative Law Judge ("ALJ") granted social security benefits effective November 21, 1994, more than four years after the mine accident;

9

- The ALJ found that the plaintiff was disabled because of discogenic and degenerative disorders of the spine (chronic lumbosacral strain, degenerative spondylosis and degenerative disc disease);

- Dr. Baum's letter to Dr. Capito dated December 26, 1991, indicated that the plaintiff had recovered from his ankle injury;

- The plaintiff continued to work in the coal industry until May 9, 1992;

- The plaintiff was diagnosed with degenerative disc disease in 1991, 1992, 1993 and 1995, which included a diagnosis in 1993 of mild diffuse degenerative spondylosis, moderate degenerative spondylosis and moderate interspace narrowing of the lumbosacral interspace;

- An independent medical examination was performed by Dr. Russell Leslie on September 20, 1995. Dr. Baum reviewed Dr. Leslie's findings and stated "that he did not find any direct correlation regarding his [the plaintiff's] back symptoms with [the] left ankle injury in August of 1990;"

- Dr. Baum's letter dated December 4, 1995 reflected that the plaintiff had a normal gait and station and had normal neurologic examination of the lower extremities.

(Trustees' Op. Jan. 14, 2005 at 14.)

The Trustees found, based on a preponderance of the medical records of evidence, that it would not be reasonable to conclude that a causal link exists between the mine accident and the discogenic and degenerative disorders of the spine (chronic lumbosacral strain, degenerative spondylosis and degenerative disc disease), which is the basis for the plaintiff's social security disability.

This Court finds that the evidence supporting the Trustees' decision is substantial, and that it was reasonable for the Trustees to conclude that the plaintiff's disability was proximately caused by discogenic and degenerative disorders of the spine, not by the mine accident.

As noted by the United States Court of Appeals for the Fourth Circuit, in McCoy v. Holland, 364 F.3d 166, 172 (4th Cir. 2004), any medical judgments should be made by a trained medical professional, not by the district court. Moreover, McCoy held that "degenerative disc disease cannot be proximately caused by a mine injury for purposes of the UMWA 1974 Pension Plan." Id. Thus, if a mine worker's SSDI award states that he is disabled as a result of degenerative disc disease, then he "must prove to the Trustees that a mine accident combined with or exacerbated his disc disease to proximately cause his disability." Id.

This Court finds that the Trustees based their decision upon all of the medical evidence submitted by the plaintiff. The plaintiff has failed to prove to the Trustees that he is disabled as a result of a mining accident. It is undisputed that Dr. Glass found that, on or about June 4, 1992, the plaintiff's mining accident exacerbated his back problems. However, this Court agrees with the Trustees that the opinion of Dr. Glass is contrary to the substantial evidence of the other doctors who were unable to find a direct correlation between the plaintiff's discogenic and

11

degenerative disorders of the spine and his mining accident. Further, this Court notes that Dr. Baum found that he could not determine if there was a direct correlation between the plaintiff's back problems and his mining accident.

In addition, in determining whether the required causal link exists between the plaintiff's disability and the mine accident, the Fourth Circuit has traditionally given great weight to the date of disability set by the Social Security Administration ("SSA"). See, e.g. Horn v. Mullins, 650 F.2d 35, 37 (4th Cir. 1981). In this civil action, the SSA determined that the onset of the plaintiff's disability was November 21, 1994. This date is four years after the plaintiff injured his ankle in the mine accident. Thus, this Court finds that the Trustees' decision was supported by substantial evidence that the progressive nature of the plaintiff's discogenic and degenerative disorders of the spine, not the plaintiff's ankle injury, caused his back problems.

Upon review of the medical reports and opinions submitted to the Trustees, this Court finds that the Trustees' decision was reasonable and supported by substantial evidence. Accordingly, the Trustees did not abuse their discretion by determining that the plaintiff had not made a showing that the mine accident caused his disability in this civil action.

## V. Conclusion

For the reasons stated above, this Court finds that the plaintiff's motion for summary judgment is hereby DENIED and the defendants' motion for summary judgment is hereby GRANTED. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: September 22, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE